## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANTHONY ELIZENBERRY,**
**SCOTT BURKE, JOSEPH GRIMES,**
**and ALEAKCO EDWARDS**

      **Plaintiffs,**

**v.**

**SSS DOWN TO EARTH OPCO LLC**
**d/b/a DOWN TO EARTH LANDSCAPING**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, ANTHONY ELIZENBERRY, SCOTT BURKES, JOSEPH GRIMES, and ALEAKCO EDWARDS, by and through their undersigned counsel and sues Defendant, SSS DOWN TO EARTH OPCO LLC d/b/a DOWN TO EARTH LANDSCAPING, and state as follows:

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

2.     Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b) because

1

Plaintiffs reside in this Judicial District and because a substantial part of the events giving rise to this claim occurred in this Judicial District.

## PARTIES

3.     Defendant, SSS DOWN TO EARTH OPCO LLC d/b/a DOWN TO EARTH LANDSCAPING ("Defendant"), is a Florida company engaged in business in Pasco County, Florida.

4.     Plaintiffs, ANTHONY ELIZENBERRY ("Plaintiff Elizenberry"), SCOTT BURKE ("Plaintiff Burke"), JOSEPH GRIMES ("Plaintiff Grimes"), and ALEAKCO EDWARDS ("Plaintiff Edwards"), reside in Florida. Plaintiff Elizenberry, Plaintiff Burke, Plaintiff Grimes, and Plaintiff Edwards, collectively known as ("Plaintiffs").

5.     At all times relevant hereto, Defendant operated and provided services in Odessa, Florida, in Pasco County.

6.     At all times relevant hereto, Plaintiffs were employees of Defendant in Odessa, Florida, in Pasco County.

## GENERAL ALLEGATIONS

7.     At all times material, Defendant acted with malice and with reckless disregard for Plaintiffs' federal and state protected rights.

8.     At all times material, Plaintiffs were qualified to perform their job duties within the legitimate expectations of their employer.

9.     Plaintiffs have been required to retain the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

10.     Plaintiffs request a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

11.     At all times relevant hereto, Defendant provided landscaping services to its customers and employed maintenance workers, among other positions, to assist with Defendant's landscaping services.

12.     Defendant hired Plaintiffs, who are all American, non-Hispanic males, to provide landscaping services for Defendant[1].

13.     At the direction of Defendant, Plaintiffs provided landscaping services to Defendant's customer, Starkey Ranch, ("Starkey Ranch"), a 2,400-acre, gated community consisting of parks, trails, preserves, ponds, roads, homes, a school, a shopping center, and several other amenities, located in Odessa, Florida.

14.     At all times relevant to Plaintiffs' employment at Starkey Ranch, Defendant had two, separate and distinct teams to provide landscaping services to Starkey Ranch – a Maintenance Team and a Detail Team.

---

[1] Defendant hired Plaintiff Elizenberry on or about June 4, 2019, Plaintiff Burke on or about March 17, 2020, Plaintiff Grimes on or about April 22, 2020, and Plaintiff Edwards on or about October 12, 2021.

15.     The Detail Team consisted of two crews, comprised of a total of about 6 Hispanic, female crewmembers, and its primary duties were pulling weeds and trimming hedges, shrubbery, and trees throughout the community.

16.     The Maintenance Team primarily consisted of two crews[2], which included Plaintiffs, and its primary duties were cutting and removing the grass, shrubbery, and trees and cleaning the entry ways, roadways, and parks throughout the community. The first Maintenance Team crew was comprised of about 3 to 4 crewmembers at any given time; this crew included at least 3 Hispanic, male crewmembers and, very frequently, 1 non-Hispanic, white, American, male crewmember, named Tommy LNU (collectively, the "Hispanic Crew"). Other than Tommy LNU, no non-Hispanic crewmember worked in the Hispanic Crew. The second Maintenance Team crew was comprised of about 4 to 5 crewmembers at any given time; this crew included at least 3 non-Hispanic, American, male crewmembers (collectively, the "non-Hispanic Crew").

17.     Defendant assigned specified, separate, and distinct sections of Starkey Ranch to the Hispanic Crew and the non-Hispanic Crew. The Hispanic Crew and non-Hispanic Crew's sections rarely, if ever, overlapped.

---

[2] On or about January or February 2021, Defendant created a new crew within the Maintenance Team to service the Starkey Ranch ponds ("Pond Crew"); however, the Pond Crew worked together on an as-needed basis. For example, during 2021, crewmembers in the Pond Crew worked together no more than about 20 days.

18.     At all times relevant hereto, Plaintiffs' supervisor at Starkey Ranch was Gary Hawkins ("Mr. Hawkins"), and Plaintiffs' Production Manager was Robert Trip ("Mr. Trip").

19.     Mr. Hawkins and Mr. Trip managed and supervised the Detail Team and Maintenance Team.

20.     At all times relevant hereto, Plaintiff Elizenberry, Plaintiff Grimes, and Plaintiff Edwards always worked with the non-Hispanic Crew and never worked with the Hispanic Crew.

21.     At all times relevant hereto, other than the limited occasions that Plaintiff Burke worked on the Pond Crew, Plaintiff Burke worked with the non-Hispanic Crew; he never worked with the Hispanic Crew.

22.     During Plaintiffs' employment at Starkey Ranch, Defendant subjected them to continuous, national origin discrimination.

23.     The Hispanic Crew was allowed to, and did in fact, leave work more than an hour before its scheduled clock-out time (4pm) almost daily and frequently arrived late to work and from lunchbreaks. The non-Hispanic Crew was disciplined if it left prior to 4pm or arrived late to work or from its lunchbreak.

24.     Moreover, the non-Hispanic Crew would frequently work beyond 4pm and be the last crew to leave Starkey Ranch.

25.     The Hispanic Crew was allowed to, and did in fact, select work equipment before the non-Hispanic Crew. The Hispanic Crew would always choose the new equipment, leaving the older, faulty equipment for the non-Hispanic Crew.

26.     Occasionally, the Hispanic Crew would break new equipment, but at no time did Defendant reprimand the Hispanic Crew for breaking work equipment. Conversely, Defendant reprimanded the non-Hispanic Crew for breaking work equipment.

27.     Despite having newer equipment, the Hispanic Crew would frequently leave their section in subpar conditions. Instead of reprimanding the Hispanic Crew for its subpar landscaping work, Mr. Hawkins and Mr. Trip would routinely order the non-Hispanic Crew to travel to the Hispanic Crew's section and correct the Hispanic Crew's mistakes. On several occasions, Starkey Ranch residents complained about the Hispanic Crew's subpar landscaping work, and, in response, Mr. Hawkins or Mr. Trip would order the non-Hispanic Crew, not the Hispanic Crew, to correct the Hispanic Crew's mistakes.

28.     After the non-Hispanic Crew would finish correcting the Hispanic Crew's mistakes, Mr. Hawkins or Mr. Trip would reprimand the non-Hispanic Crew for not completing its duties within its own section in a reasonable time, despite being fully aware that the non-Hispanic Crew had to divert all of its focus and effort to the Hispanic Crew's section.

29.     Additionally, the non-Hispanic Crew frequently assisted the Detail Team with hedging trees. The non-Hispanic Crew was expected to provide perfect landscaping maintenance results and would be reprimanded by Defendant for any landscaping work that was less than perfect, which was a far cry from Defendant's expectation and treatment of the Hispanic Crew.

30.     Moreover, some crewmembers of the Hispanic Crew took naps on the job; they would sleep on lawn mowers, in park areas, and in shaded areas within Starkey Ranch. Defendant was aware of this activity but failed to reprimand them. Conversely, Defendant did not allow the non-Hispanic Crew to nap or rest on the job.

31.     During their employment at Starkey Ranch, Plaintiff Burke, Plaintiff Elizenberry, and Plaintiff Grimes complained about the national origin discrimination several times on behalf of themselves individually and non-Hispanic Crew collectively to Mr. Hawkins during their employment at Starkey Ranch, and, each time, Mr. Hawkins would tell Plaintiff not to worry about the discrimination issues and that Mr. Hawkins would take care of Plaintiffs' complaints. However, Mr. Hawkins refused to investigate and resolve Plaintiffs' complaints.

32.     Between about December 1, 2021, until Plaintiffs' terminations, the non-Hispanic Crew consisted of Plaintiffs only.

33.    In or around early December 2021, Plaintiff Burke, Plaintiff Elizenberry, and Plaintiff Grimes complained about the national origin discrimination on behalf of themselves individually and non-Hispanic Crew collectively. However, Mr. Hawkins refused to investigate and resolve their complaints.

34.    On December 14, 2021, Defendant fired Plaintiffs, the entire non-Hispanic Crew, stating that Plaintiffs were seasonal workers. To the contrary, Plaintiffs were not seasonal workers when Defendant terminated them.

35.    Defendant did not fire anyone on the Hispanic Crew or Maintenance Team when it fired Plaintiffs and instead hired more Hispanic workers to replace the non-Hispanic workers it fired.

36.    At all times relevant hereto, Plaintiffs' work performances were more than satisfactory.

37.    On December 22, 2021, Plaintiffs filed complaints of national origin-based discrimination, dual filed with the Florida Human Relations Commission ("FCHR") and Equal Employment Opportunity Commission.

38.    The allegations in Paragraphs 11 through 36 above represent only a fraction of the national-origin-based discriminatory and retaliatory treatment and conduct by Defendant directed at Plaintiffs.

## COUNT I
## <u>42 U.S.C. § 1981 DISCRIMINATION</u>

39.     Plaintiffs reallege Paragraphs 1 through 38 as if fully alleged herein.

40.     Plaintiffs are non-Hispanic males

41.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiffs based on their race  in violation of 42 U.S.C. § 1981, for which Defendant is liable.

42.     Defendant knew or should have known of the discrimination.

43.     As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs pray for the following damages against Defendant:

     a.     Back pay and benefits;

     b.     Interest on back pay and benefits;

     c.     Front pay and benefits;

     d.     Compensatory damages for emotion pain and suffering;

     e.     Punitive damages;

     f.     For costs and attorney's fees;

     g.     Injunctive relief;

     h.     For any other relief this Court deems just and equitable.

## COUNT II
## 42 U.S.C. § 1981 RETALIATION

44. Plaintiffs reallege Paragraphs 1 through 38 as if fully alleged herein.

45. By the conduct described above, Defendant engaged in unlawful employment practices and retaliated against Plaintiffs for opposing the unlawful discrimination in violation of 42 U.S.C. § 1981, for which Defendant is liable.

46. Defendant knew or should have known of the retaliation.

47. As a result of Defendant's unlawful retaliation, Plaintiffs have suffered and continues to suffer damages.

WHEREFORE, Plaintiffs pray for the following damages against Defendant:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotion pain and suffering;

e. Punitive damages;

f. For costs and attorney's fees;

g. Injunctive relief;

h. For any other relief this Court deems just and equitable.

Dated: January 25, 2024

FLORIN|GRAY

/s/Wolfgang M. Florin

10

Wolfgang M. Florin
Florida Bar No.: 907804
wflorin@floringray.com
Miguel Bouzas
Florida Bar No.: 48943
miguel@floringray.com
Christopher D. Gray
Florida Bar No.: 0902004
cgray@floringray.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 220-4000
Facsimile (727) 483-7942
Attorneys for Plaintiffs